I was a little surprised that we were taken out of order, but I hope that won't throw my concentration here. This case has, to me, several issues, and it's almost like, where do we begin? I suspect that I need to touch on the jurisdictional issue before going into what I consider to be the heart of the matter. The government in this case is challenging whether we have jurisdiction to even be in front of this Court today, because there was a plea agreement which contained a written waiver of my client's right to bring any postconviction proceedings. And the position that I bring to this Court today is that the waiver of his appeal rights is invalid because the plea agreement itself is invalid, and that is due to the fact that it was not voluntarily and intelligently made. And that is because you believe that his attorney at the time misunderstood or misrepresented his criminal history? It's because he detrimentally relied upon her advice based upon her analysis of the rap sheets that was presented to her by the government. The government ---- Well, he knew his own criminal history, didn't he? Well, that's what I ---- I'm not sure that he understood that. It's a dichotomy for me, because if you have a defendant, let's assume you have a defendant who knows their criminal history, but they don't tell their attorney. Their attorney then proceeds to ---- or are not honest with their attorney. Their attorney proceeds to enter into a plea agreement with the government based upon this undisclosed criminal history. The defendant has it going both ways. If the government eventually finds out and they get a sentence that is harsher than they would have otherwise, then they can say, oh, ineffective assistance of counsel because they didn't find my criminal history and therefore I didn't understand that my criminal history was going to be calculated. If the government doesn't find it, then they get a lower sentence and they've been able to pull the wool over everybody's eyes. So, I mean, it kind of encourages people to misrepresent and lie to their counsel about their criminal history because, based upon what you're suggesting, they have a win-win situation. I understand your point. I have to respectfully say I disagree, or at least I don't believe that in this particular case that is what occurred. We're dealing with a man who had a third-grade education. He comes from a foreign culture. He's not – he doesn't speak the language of this country. I am not convinced in my own mind, just as I believe trial counsel was not convinced in her mind that he was deliberately withholding anything. I think it was more a question of his not understanding what occurred. I mean, he knew that something with the legal system involved him with a DUI, and he did tell her that he did go to court one time. I – so, therefore, he wasn't completely telling her, oh, no, I've never done that. But wasn't he sentenced to jail? I think the – according to the records, he had 10 days in jail prior to the conviction because he was sentenced to time served. Okay. Okay. So I think it's more of a question of his not understanding what occurred. But then he had also supervised release of some kind. He was on probate – 36 months probation. And he was on probation at the time of the current offense, which is what gave him the extra points of the ineligibility. So we have to – we have to – in order to believe that he didn't know, we would have to believe that he was totally oblivious to the fact that he was on probation and reporting to probation officers for no good reason. Well, I believe in these DUI cases, it's informal probation where you're not assigned to a particular probation officer and you don't – You have to meet with somebody at some point. I mean, they don't just let you go and say you're on probation and nobody ever follows you up or nothing. I mean, somebody – you have to meet with somebody. I mean, I think that's unrealistic, isn't it? But I think – you know, not only do I do appellate work, I also do work on the trial level. And just from my own experience as an attorney, when I'm in a situation like this and I know the county where this took place, I send an investigator to copy the court as counsel herself said, clients are very poor historians of their own criminal history. I believe the – I'm a district judge. I'm very sympathetic to the issue because in Hawaii where I sit, we have a lot of people of Filipino ancestry who have just come from the Philippines. We have a lot of people from Asia. And so I am very well aware of the fact that you have to be particularly careful. I'm playing the devil's advocate with you here a little bit because these are concerns that I've heard raised by many. And that is that the circuit court should not create a situation where it benefits defendants to lie to their lawyer for many good reasons. I agree with you there. I really believe that – I guess the point I'm interested in really is this – is the motion to withdraw the plea. Yes. Because when you get right down to it, that to me is kind of the heart of the issue because you say, look, she didn't – or counsel didn't – you know, the government didn't misrepresent knowingly. They just said they thought there wasn't anything. Counsel listens to that. The guy says he doesn't have anything. Now we've got these little papers here and I can look through here and I see he did have something. And now the judge knows he has something and he hasn't been sentenced. So what – That's right. That's why we get to the heart of the argument is was there an abuse of discretion in not letting him withdraw the plea? The heart of the matter is whether or not the district court applied – really applied a fair enough reason, as in John Davis v. Garcia and Davis, in allowing him to withdraw his plea. The case of U.S. v. Davis I think is completely on point. This was a case, I believe it was a doctor, if I remember correctly, whose attorney led him to believe that he was going to get probation. And instead it was – and so he pled guilty based on his attorney's advice that he would receive probation. And it wasn't until the pre-sentence report was prepared and he learned from probation that not only was he not going to get probation, it was impossible or virtually impossible for that to have even been a valid sentence. And in that case, the Court felt that there was a fair and just reason to withdraw. And it was based on newly discovered evidence, which was the fact that the basis of the plea agreement – Davis seems to say that a different standard applies when the motion is made before sentencing. That's right. As opposed to after the sentence is imposed. And this case is a before-sentencing case. And the judge seemed somewhat troubled by this disclosure – I mean, by this information when the motion was made. Remind us why he ultimately denied the motion. Well, the judge believed he had no discretion to sentence below the mandatory minimum. He never related that to counsel's motion to withdraw the guilty plea, which what he did is he said to the parties, to the attorneys for the parties, the government and Canius, find an alternative solution and ask them to brief it. And then they came back and the government said, no, we're not going to offer any kind of alternative solution because we're concerned that this is going to open the floodgates. And the judge – so the judge was trying to gauge that any defendant who doesn't like what his sentence ends up being is then going to come back and try to do a motion to withdraw. The floodgates are already open, believe me. And this is a pre-sentence motion. This is a pre-sentence motion. Let me ask you as a question of prejudice. Was the judge correct or the government correct that there wasn't really any alternative a mandatory minimum, so the judge was stuck anyway? I mean, was that what the judge was saying, that the sentence, he was trying to have you negotiate a different sentence? I think the judge was telling, in my interpretation, is go back and make another offer, maybe redo the new indictment, do something to get out from under the thousand plans or whatever. Well, I think the judge was justifiably concerned, as I would be under the circumstances, with the fact that other participants in the same transaction, including those who were more culpable in the judge's view, got substantially lower sentences. Why don't you save those for rebuttal? No, well, you're using more of it now, so why don't you save the rest of it for your rebuttal? Okay. All right. Thank you. California. I was not trial counsel in the district court. You say you were? We're not. Well, that helps insulate you, so go ahead. I think everything that was done by the government. It was clear the judge felt the government hadn't done anything inappropriate. But to get to the heart of the matter, once it does come up that the government was under a misapprehension, the counsel was under a misapprehension, the defendant was. Should the judge have permitted the motion to withdraw? No. The judge did not use his discretion in denying the motion to withdraw the guilty plea. What do you make of this case that Ms. Levy cited in the 28J letter, the Davis case? Well, I think that certainly it's distinguishable in that the Ninth Circuit's court has generally held that it's on a very rare occasion where there's a prediction of a defense counsel as to what a potential sentence might be, and then what actually is going to be the sentence to then justify or permit withdrawal of the guilty plea. But this is like a mistake of fact. It's a mutual mistake of fact. It's a mutual mistake of fact. And I think the Barnes case that's cited in our brief from the Seventh Circuit speaks to this issue, that it was a mutual mistake of fact because the judge did give the disclaimer, and it was in the plea agreement as well, that ultimately he had the final call as to what the sentence was going to be. The government never said he's a Category I criminal defense. But the fact of the matter was, and I'd like to tie back into some of the earlier discussion I had with the counsel, let's not paint Mr. Conyerson too sympathetic of a light here. But the fact of the matter is, in a prior conviction, I'll be just driving under the influence, that, in fact, disqualifies him for safety value reduction. He was on probation at the time. In fact, he was in violation of his probation. He was on probation, not having reported for the alcohol program. This notion that somehow he didn't understand that when he pled under an alias to that DUI two years earlier in Merced County, that he didn't know he was completely guilty, and then he gives a new name when he's arrested in this case, lies about the circumstances under which he's now been arrested in this particular case. His attorney rightly goes to him and inquires whether or not he had been convicted because she saw on the rap sheet the outstanding warrant. And he said no, he had not pled guilty and he could go back to court. The record is anything but to support that. I believe this is our position. Certainly the defendant knew full well of his prior conviction. It was recent in time. It was also that record should have, as Ms. Levy said, should have motivated the defense counsel to do a little investigation. Well, she did do some investigation. And I think that... What did she do? She just received a discovery from the government. That's all she did. She made a follow-up request in terms of getting a second printout of the Kletz printout that showed there was an outstanding warrant. And she did what any competent, what a reasonable attorney would do in this circumstance is go to her client. And her client assures her, no, I do not have that conviction. So you have a printout that shows no conviction. Even though she says in her declaration that, you know, these clients are notoriously bad historians of their own criminal history? This is a fact of the fact statement that she's making. I appreciate that. She's throwing herself down, saying I potentially violated the Sixth Amendment, which ultimately then by throwing herself down benefits her client. But if we step back and say what actions did she take, and if we look at the case law in the area, this is an attorney who did get the rap sheet from the government, reviewed the rap sheet, saw there was a warrant outstanding, and conducted a discussion with her client, had numerous discussions with her client, but asked them specifically. I didn't follow up on the records. That's correct. I mean, here's kind of my issue. I think why in this case the government was under misapprehension, the counsel was. Now we know the information. So why doesn't the government step in instead of pushing through with this? And now we're in the Ninth Circuit. We're down the road. This seems like it called out way back then for a practical solution. Well, I think as was assured. And it's not every defense. It's not because I get the pre-sentence report back and I say, woo, it's 190 months and not 100 months. This is a different situation. That may be the reason Mr. Brown said at the beginning that he was not trial counsel. No, no. It's absolutely not. The fact of the matter is, as was acknowledged I think by Ms. Levy, there is no intermediate step here that could have been fashioned. We're talking about 10,000 marijuana plants. This was the largest grow in Sequoia National Park history. I cannot underscore the importance of this issue. But this guy was pretty far down the chain. He's down the chain. He was a co-conspirator. Anybody can be a co-conspirator. He was not an organizer. All he was was a weeder and a harvester. That's all he was. He was farm labor. Congress has described a mandatory minimum sentence of 10 years when there's over 1,000 plants. If a person's not safety eligible, safety valve eligible, which Mr. Kast clearly is not safety eligible. So to the extent that District Court Judge Ishii had expressed desire for some sort of punishment between 37 months, which everyone else got, but for his cousin, who also was not safety valve eligible, who did get 10 years, Mr. Kast's criminal history prevents him from getting anything other than 10 years. And certainly we recognize that that is a severe punishment as prescribed by Congress. Marijuana. Well, but what you're saying is he couldn't have gotten a different sentence in light of the plea. So his only other alternative would have been to go to trial, correct? If he withdrew the plea, then he could decide to go to trial. You're just saying no other plea could be negotiated because now we all know he has this conviction. I don't think the rules would be. I don't know if we said it was a floodgate concern necessarily, but recognizing that so much of your this circuit's decisions and the high court's decisions about the solemnity and the importance of pleading guilty, when you have complete rule-loving colloquies, you have written plea agreements, you have counsel, you have a Spanish-speaking interpreter, and you have a defendant who just two years earlier received that criminal conviction. Let's not have it where you talk about, I know you said maybe devil's advocate, but the win-win situation, you give a false name and you hope that no one's going to find that you actually have this particular conviction. And so lo and behold, it turns out that the Probation Department does precisely what we in the system expect it to do, discovers the prior conviction. And now it becomes, no, no, no, I didn't really mean it. I also would like to touch on, and I think the waiver of appeals should not be just dismissed summarily, in that this Court has recognized in Littlefield that there is an issue. What's the issue we have to determine on whether the waiver is valid? The voluntariness? Well, ultimately, in terms of knowing involuntary, is there substantial compliance with Rule 11? And it's both the colloquy that the Court provides and the written plea agreement that was as part of the record. You will see in the record that the Court highlights, certainly for Mr. Conyers, that he had a right to appeal, and he was giving up that right to appeal. Did he understand that? He said he understood it, and he was giving up the right to appeal. But the waiver of appeal, it is my understanding, almost always, as a matter of law, excludes ineffective assistance of counsel claims. On a habeas challenge, we're not hearing a 255, which is another posture of this case that makes it somewhat unusual. The Geronimo decision from the circuit in 2005 says, ordinarily, these ineffective claims, as you well know, are going to be done by 2255, which is the way it should be. All we have here is a declaration by counsel, and certainly we have great regard for counsel, but no opportunity for the waiver of attorney-client privilege that goes on in a 2255 litigation, no opportunity for the government to get into the way that counsel had had with their client. Well, is it your suggestion that what we should be doing here is simply saying, on the record as you view it, the waiver was appropriate, the judge did not abuse his discretion, affirmed, but not addressed the issue of ineffective assistance of counsel? And have that returned? Leave that for some later time? I do believe that certainly would be a very reasonable. But what about the motion to withdraw? Because that would be swept up in the appeal. The key argument, unless you find, I mean, certainly mutual mistake effect still is being argued by the appellant, as is government misrepresentation and a couple other prongs. But their best and key argument would seem to be, in listening to our discussion here, the ineffective assistance of counsel. That does come within the 2255. I mean, if we were to leave that, if the question is if it's voluntary and Rule 11, minor violation, is considered harmless here, if there's a mutual mistake effect, does that, at least as alleged, does that go to the voluntariness? It does. It goes to the motion to withdraw the plea, actually. Right. So certainly if the Court ultimately concludes that there was a mutual mistake effect, which, again ---- But at the same time, both sides, I think at least in writing, recognize that the representations or the understanding about criminal history might not be, you know, as represented. Because it says if, it turns out, right, that he's eligible. So, you know, it was conditional. Without question, it was conditional. Right. All right.  Thank you, Your Honor. First of all, there was not substantial compliance with Rule 11. The judge did not advise Mr. Kanyas that he could not withdraw his plea during the Rule 11 hearing. Moreover, the judge never ascertained what kind of interpreter or was there an interpreter who interpreted the plea agreement for Mr. Kanyas. And the fact of the matter is it was his counsel who, for whom Spanish is not her native language, English is. And there is no signature on that plea agreement and no attestation that a certified court interpreter or person who's met that certification was at all involved in the plea agreement stage. And since it was not read out loud at the plea hearing, I don't think that we could say that this was just a variance, just a minor, a minor Rule 11 error. And there's the case from last year that I don't know how to pronounce it, Bayonne-Sanfone-Bessantana, that had to do with translating a jury waiver form that you're probably familiar with, and I think the same logic that dictated that the jury waiver wasn't valid should dictate that this, the Rule 11 hearing and the plea agreement were invalid. Thank you. The case just argued is submitted.
judges: Hug, McKeown, Ezra